UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KATHERYN SWENSON | CIVIL ACTION NO. 15-cv-2042 |
| VERSUS | JUDGE FOOTE |
| ELDORADO CASINO SHREVEPORT JOINT VENTURE | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Donald Swenson was employed at the Eldorado Casino in Shreveport and participated in a group life insurance plan provided by Eldorado. After Mr. Swenson died, his wife Katheryn Swenson ("Plaintiff") filed a claim for life insurance benefits. The claim was denied, and Plaintiff filed suit in state court against Eldorado and two insurers who were connected to the plan.

One of the insurers, joined by the other defendants, removed the case based on an assertion that Plaintiff's claims are completely preempted by ERISA and therefore subject to removal. Plaintiff filed a Motion to Remand (Doc. 12) that is now before the court. For the reasons that follow, it is recommended that the Motion to Remand be denied.

**Background Facts**

The available facts are limited to those presented in Plaintiff's petition and an affidavit submitted by a claims manager for Lincoln National Life Insurance Co. They indicate that Mr. Swenson was employed in Eldorado's surveillance department from February 2010 until

his death on April 18, 2014. During the time Mr. Swenson was employed, Lincoln National issued a group insurance policy to Eldorado to fund an employee welfare benefit plan maintained by Eldorado. Mr. Swenson was eligible for coverage under the policy during the time he was actively working for the casino. Plaintiff alleges that Eldorado paid for $36,000 in basic life coverage with Lincoln National, and Mr. Swenson paid for an additional $100,000 in optional coverage with Lincoln National.

Eldorado terminated coverage with Lincoln National on December 31, 2013. The new insurer was United of Omaha. Exhibit D to the Notice of Removal is an announcement that indicates meetings were held in November 2013 to allow eligible employees an opportunity to enroll for coverage with the new insurer. Plaintiff alleges that Mr. Swenson attended a meeting in early 2014 and signed up for United of Omaha's basic life coverage for $22,000 and an additional $100,000 in voluntary employee life coverage.

Plaintiff does not provide many facts relevant to Mr. Swenson's work history, but it appears he had some health issue that prevented him from working for a time. Plaintiff does allege that on January 27, 2014, Mr. Swenson was released by his physician to return to work. He attempted to return to his surveillance position, but Eldorado would not return him to active duty. Swenson applied for other positions, but Eldorado never allowed him to work in them. Plaintiff alleges that Eldorado nonetheless represented to United of Omaha that Mr. Swenson was an active or eligible employee at the time of his enrollment in the United of Omaha policy.

Plaintiff alleges that Mr. Swenson's share of premiums for the voluntary life coverage were paid by Eldorado to United of Omaha via deductions from Swenson's "paychecks." Even when Mr. Swenson was unable to actively work, he paid the premiums out of his own pocket to continue the insurance in effect. Plaintiff alleges that neither she nor Mr. Swenson were ever informed prior to Mr. Swenson's death in April 2014 that he did not meet the definition of an eligible insured under the United of Omaha policy.

Plaintiff filed claims for benefits with both Lincoln National and United of Omaha. Both claims were denied. Lincoln National denied on the grounds that Eldorado terminated coverage with the Lincoln National policy effective December 31, 2013, which ended Mr. Swenson's coverage under that policy a few months before he died. United of Omaha denied the claim on the grounds that Mr. Swenson was not actively working, within the definition of the policy, so as to trigger coverage when it commenced on January 1, 2014.

Plaintiff filed suit in state court against Eldorado, Lincoln National, and United of Omaha. She asserted claims under Louisiana insurance statutes regarding mandatory premium provisions for conversion rights that allow an insured to convert group coverage to an individual policy. She also invoked state law claims based on equitable estoppel and detrimental reliance. Finally, she prayed for statutory penalties for bad faith handling of her claims.

Lincoln National filed a notice of removal based on ERISA complete preemption and alleged that its policy had been part of an employee group welfare benefit plan covered by

ERISA, and it construed Plaintiff's claim as seeking relief within ERISA's civil enforcement provision. Eldorado and United of Omaha filed separate statements that they consented to the removal, but neither of them asserted any additional grounds for jurisdiction. Accordingly, there is no assertion of diversity jurisdiction or that the claim against United of Omaha is completely preempted by ERISA. The parties have had ample opportunity to present any such alternative bases for jurisdiction, but they have not done so.

**Removal of ERISA Claims**

ERISA provides a uniform regulatory regime over employee benefit plans that provide health, life, disability, severance and other benefits. It includes expansive preemption provisions that are intended to ensure that employee benefit plan regulation is exclusively a federal concern. Aetna Health, Inc. V. Davila, 124 S.Ct. 2488, 2495 (2004). The principal enforcement provision of ERISA is found in Section 502(a)(1)(B), which provides:

> A civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

This provision has been held to have such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule, and causes of action within the scope of the ERISA enforcement provision are removable to federal court. Metropolitan Life Ins. Co. v. Taylor, 107 S.Ct. 1542 (1987). If an individual could have brought his claim under the ERISA enforcement provision, and where there is no other independent legal duty that is

implicated by a defendant's actions, then the claimant's cause of action is completely preempted by ERISA. Davila, 124 S.Ct. at 2496.

**Analysis**

    **A. Was the Lincoln National Policy Part of an ERISA Plan?**

Lincoln National contends that its policy was part of an ERISA plan, which could allow for removal. Plaintiff contests that characterization of the plan. An ERISA employee welfare benefit plan includes any plan, fund, or program established or maintained by an employer for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, disability, death, or similar benefits. 29 U.S.C. § 1002(1).

The Fifth Circuit uses a three-prong test to determine whether an employee benefit arrangement meets the definition of an employee welfare benefit plan and, thus, is an ERISA plan. Shearer v. Southwest Service Life Ins. Co., 516 F.3d 276, 279 (5th Cir. 2008). The arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees. Id., citing Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993).

Lincoln National presents a declaration from James Beyer, a manager with the company, who states under penalty of perjury that its policy was issued to Eldorado to fund a plan established and maintained by Eldorado, and Mr. Swenson was eligible for coverage

under the policy during the time he was actively working for Eldorado. As sponsor of the plan, Eldorado performed administrative tasks such as identifying eligible employees and providing certificates of insurance to covered employees. Eldorado made insurance premium payments on behalf of its employees. It also facilitated and coordinated the submission of claims under the policy and answered questions from the insurer about employees and their job descriptions. Doc. 9, Exhibit 2. The policy acknowledges on page 36 that it may be subject to ERISA; it sets forth administrative remedies that must be exhausted before a claimant may bring a civil action under ERISA. Id. Plaintiff challenges Lincoln National's evidence as self-serving, but she offers no competing evidence.

The evidence shows that there was a plan and that Eldorado, the employer, established or maintained the plan with the intent to benefit its employees by providing them the opportunity to have life insurance as a job benefit. The other factor is whether the plan falls within the safe-harbor provision[1], which excludes a plan that meets all of four factors. One of those factors is that the employer makes no contribution to the policy, and another is that the employer's sole function is to permit the insurer to publicize the policy to its employees and then collect premiums through payroll deductions. The undisputed evidence is that

---

[1] The safe-harbor provisions provide that a plan will not qualify as an ERISA plan if all four of the following elements are satisfied: "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan." Meredith, 980 F.2d at 355; Bennett v. Libbey Glass, Inc., 2015 WL 5794523 (W.D. La. 2015).

Eldorado made contributions in the form of premium payments and played a role in the administration of the plan beyond what would fall under the safe-harbor provisions. Lincoln National has satisfied its burden of showing that the Eldorado plan was governed by ERISA.

### B.  Claim for Conversion Rights and Preemption

Plaintiff squarely seeks payment of benefits under the Lincoln National policy that was formerly part of the plan.  Paragraph 22 of her petition states: "Plaintiff pleads that she is entitled to the full amount of the $136,000 in the Lincoln National policy limits because her husband was not informed of his right to conversion of the group policy to an individual policy and her husband was not given the right required by Louisiana law to convert the $136,000 in 'group life' insurance benefits to an 'individual' policy."

She bases that right to conversion on a Louisiana statute, La. R.S. 22:942, which states that each policy of group life insurance shall contain certain provisions.  Among those mandatory provisions is that if the insurance on an individual covered under the policy ceases because of termination of employment or membership in the class, the individual shall be entitled to have issued to him an individual policy of life insurance if certain terms are met. Section 22:942(10).  Another provision requires that a group policy provide that if it terminates then every individual insured and who has been so insured for at least five years prior to termination shall be entitled to have issued to him an individual policy on certain terms.  Section 942(11).

Plaintiff invokes those Louisiana statutes and argues that they provide rights beyond the claim to enforce policy terms that would be preempted by ERISA. The Lincoln National policy, however, contains express provisions for a conversion privilege. It states that an individual life policy, known as a conversion policy, may be purchased if the insurance terminates due to termination of the policy and the person has been covered continuously for at least five years. The policy contains a number of other detailed provisions regarding the conversion privilege and benefits that are available. Plaintiff's husband may or may not have been entitled to conversion under the terms of the plan, but conversion rights were set forth in the policy in some form.

The federal courts have divided over whether a claim for benefits under an actual conversion policy is governed by ERISA. See Yong Ok Sankey v. Metropolitan Life Ins. Co., 2012 WL 2338964, *3 (E. D. La. 2012); John T. Burnett, ERISA Preemption and Individual Conversion Policies: How Broad Should ERISA Coverage Be?, 35 Tort & Insurance Law Journal 781 (2000). This case, however, does not address a claim for benefits under a policy that was actually converted from a group ERISA policy to an individual policy.

The claim in this case is that conversion rights were violated when Mr. Swenson was not given the opportunity to convert his policy when the Lincoln National policy ended. There is less disagreement on that issue, and a number of district courts in this circuit have held that claims regarding conversion rights related to an ERISA policy are completely

preempted by ERISA. See, e.g., Yong Ok Sankey, 2012 WL 2338964, *4, agreeing with the reasoning of White v. Provident Life & Accident Insurance Co., 114 F.3d 26 (4th Cir. 1997) that a right to convert from an ERISA plan presents a claim that is preempted by ERISA; Wright v. Anthem Life Ins. Co. Of Indiana, 2000 WL 870807, *7 (N. D. Miss. 2000) ("Claims arising from the right to convert to an individual policy are grounded in ERISA and are to be decided by reference to the terms of the ERISA plan"); Gabner v. Metro Life Ins. Co., 938 F.Supp. 1295, 1302 (E. D. Tex. 1996) (right to conversion to an individual life insurance policy was governed by ERISA).

A similar claim was presented in Perry v. Prudential Company of America, 2012 WL 253403 (M. D. La. 2012) when a divorced spouse of the deceased made a claim that was denied on the basis that the divorce terminated coverage under the policy. The plaintiff contended that her claims did not arise under ERISA because the ERISA-governed plan had terminated upon her divorce, and her claims were based upon an implied contract of insurance under Louisiana law rather than a claim under the actual policy. The court noted decisions that have held that the issue of whether a conversion of coverage occurred was governed by ERISA and held that the claims were completely preempted and subject to removal.

The undersigned agrees with the rationale in those decisions. Plaintiff has asserted a claim for benefits and conversion rights. Some such conversion rights were available under the terms of the plan, and there may be statutory provisions within ERISA on the same

subject matter. The court need not address at this time whether the claims against the other defendants are preempted by ERISA because, having established that jurisdiction exists because of the claim against Lincoln National, the court may exercise supplemental jurisdiction over any remaining claims. Giles v. NYL Care Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999); Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of Louisiana, Inc., 2015 WL 952121, *2 (M. D. La. 2015).

There is another preemption concept that often arises in ERISA cases. The Act provides in 11 U.S.C. § 1144(a) that its provisions, subject to exception, "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." That statute gives rise to what is known as conflict preemption. The statute adds, in what is known as the savings clause, that, subject to exception, nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." Section 1144(b)(2)(B).

Plaintiff's memorandum contains a good deal of discussion regarding whether her Louisiana law claims are saved from preemption by the ERISA savings clause. That clause, however, applies only to conflict or statutory preemption under ERISA Section 514, 29 U.S.C. § 1144(a). The savings clause does not apply to the concept of complete preemption

under ERISA Section 502.  <u>Quality Infusion Care, Inc. V. Humana Health Plan of Texas, Inc.</u>, 290 Fed. Appx. 671, 681 (5th Cir. 2008).[2]

**Conclusion**

The Lincoln National policy was part of an ERISA plan.  Plaintiff made a claim for benefits and rights under that plan, and those claims are within the scope of Section 1132(a)(1)(B), which means the claims are completely preempted and subject to removal. The court has supplemental jurisdiction over the claims against the other parties.  The savings clause does not deprive the court of jurisdiction. Removal was proper.

ACCORDINGLY,

IT IS RECOMMENDED that Plaintiff's Motion to Remand (Doc. 12) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel

---

[2] Conflict preemption "covers laws that 'relate to' an ERISA plan, whereas the preemption at issue here is complete preemption under ERISA § 502. The savings clause applies only to the former type, not the latter, while removal applies only to the latter, not the former."  <u>Quality Infusion Care</u>, 290 Fed. Appx. at 681-82.

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of January, 2016.

_____
Mark L. Hornsby
U.S. Magistrate Judge